Filed 3/30/26  Lopez v. State Personnel Board CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| TRACYLYN LOPEZ, | C101414 |
| Petitioner and Appellant, | |
| | (Super. Ct. No. 34-2021-80003625-CU-WM-GDS) |
| v. | |
| STATE PERSONNEL BOARD, | |
| Respondent; | |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION et al., | |
| Real Parties in Interest and Respondents | |

In 2017, plaintiff Tracylyn Lopez, a corrections officer employed by real party in interest Department of Corrections and Rehabilitation (CDCR), was disciplined for discourteous behavior to two other corrections officers who, on the orders of a

1

supervisor, had reported Lopez's behavior. Lopez subsequently posted on a union bulletin board at the prison entrance a document reproducing parts of her adverse action packet, as well as a document related to another corrections officer's discipline. The document pertaining to Lopez's discipline named the two corrections officers who reported her misconduct. CDCR filed a new notice of adverse action against Lopez based on her posting of this document, suspending her for 60 workdays. An administrative law judge (ALJ) sustained one charge, dismissed others, and reduced the penalty. Defendant State Personnel Board (SPB) adopted the ALJ's findings of fact and conclusions of law in part, including the rejection of Lopez's First Amendment defense, but rejected the ALJ's determinations dismissing the charge of inexcusable neglect of duty and reducing the penalty. The SPB sustained the inexcusable neglect of duty charge and reinstated the 60-workday suspension penalty. Lopez filed a mandate petition in the trial court. The trial court denied Lopez's motion to augment the record and her mandate petition.

On appeal, Lopez argues the trial court (1) erred in rejecting her First Amendment defense and in excluding evidence relevant to that defense, (2) violated her due process rights by sustaining the charge of inexcusable neglect of duty, and (3) violated her due process rights by sustaining allegations and the penalty on factual bases different than those alleged in the notice of adverse action. In this mandate proceeding, we review the SPB's action, not the trial court's decision, and therefore we will deem Lopez's arguments to challenge the SPB's actions, not the trial court's decision. We affirm.

BACKGROUND

*Factual Background*

Lopez began working as a corrections officer at Salinas Valley State Prison in 2002. She also volunteered as job steward for the California Correctional Peace Officers Association labor union.

2

In 2017, Lopez received a notice of adverse action and was suspended for discourteous behavior for comments she made to corrections officers Joshua P.[1] and Jeffrey D., as detailed more fully below. According to Jeffrey D., after Lopez made her remarks, a correctional lieutenant ordered him and Joshua P. to write a memo reporting the incident. They did not want to do so, but they obeyed the order.

Lopez originally was suspended for 24 days, but her penalty was first reduced to nine days and then to a letter of reprimand. She was surprised by the disciplinary action given "all the cussing that goes around the prison." Because of the ubiquity of cursing in the prison, her discipline seemed to Lopez like a change in policy—one that she thought other employees should know about. Lopez "felt like [she] needed to let other Bargaining Unit 6 members know that the prison, one, is punishing people for cussing, and two, that they're going really, really high on the punishment, and then making us waste people's time and money to fight these cases to ultimately get it back down to" a letter of reprimand.

Lopez cut and pasted portions of three documents from her adverse action packet into a single document. On July 13, 2018, she posted the document on her union's bulletin board by the prison's front entrance and in the complex where she worked. Lopez avers that she posted the document because she "wanted to show that administration was going above and beyond punishing someone for something they had never punished anyone before for, and to show that ultimately the decision was made to give me [a letter of reprimand]. So it kind of showed that they were going real high on the punishment." Lopez highlighted passages in the document. Joshua P.'s and Jeffrey D.'s "unusual" last names appeared in at least two highlighted portions of the document.

---

[1] To protect their privacy, we refer to these corrections officers, and two other corrections officers, by their first names and last initials. (Cal. Rules of Court, rule 8.90(b)(10).)

Lopez redacted her own first name from the document "because there's inmates walking in there." Lopez received approval from the president of the Salinas Valley chapter of her union, correctional officer Keith White, before posting.

Lopez also posted a document related to disciplinary action against another corrections officer, Elizabeth H. She posted Elizabeth H.'s discipline for the same reason she posted her own: "They went real high on her, and then she had to jump through the hoops . . . to get it lowered, or dismissed . . . ." Lopez posted that document "to show that here again administration is looking for ways to punish cops somewhat illegally."

Lieutenant Michael Wade saw Lopez's posting and found it to be inappropriate. He was concerned that the individuals identified in the document could be labeled as "rats or snitches" and alienated by staff for reporting misconduct. It would also have a chilling effect on future reports of staff misconduct. Lieutenant Wade informed Warden Shawn Hatton of the posting. Lieutenant Jose Ortega also saw the posting, thought it should be taken down as inappropriate, and notified Warden Hatton about it. Warden Hatton found the posting to be inappropriate because it singled out certain officers and could be construed as derogatory and harmful.

On July 17, 2018, Warden Hatton summoned Lopez to his office. He asked her to remove the posting because it was inappropriate and other people's names appeared on the documents. Lopez agreed to do so. Lopez acknowledged in her testimony that there was "code of silence" training at Salinas Valley State Prison, part of which instructs that the code of silence may make staff hesitant to report misconduct for fear of being labeled a rat or a snitch.

Meanwhile, Joshua P. started receiving telephone calls in which the caller would call him a rat and a bitch and hang up. Jeffrey D. grew concerned with being labeled a rat or a snitch based on the posting. He testified that the situation became "unsafe." Joshua P. and Jeffrey D. both started experiencing negative interactions with other corrections officers. Jeffrey D. testified that the posting threatened his safety because

4

other staff isolated him, including, for example, leaving him alone with an inmate when he responded to a violent inmate incident involving multiple inmates. Feeling unsafe at work because of Lopez's posted document, both officers filed workers compensation claims and went on leave on or about July 18, 2018.

*Current Adverse Action*

On July 26, 2019, CDCR filed an amended notice of adverse action (which we will refer to as the notice of adverse action or notice) against Lopez. The notice alleged that she previously had been disciplined for discourteous treatment of Joshua P. and Jeffrey D. After that discipline, Lopez posted a document on her union's bulletin board in the prison which detailed the prior adverse action and included the last names of officers Joshua P. and Jeffrey D. The notice alleged that Lopez posted this document in retaliation against Joshua P. and Jeffrey D., thereby neglecting her duty as a corrections officer. The notice informed Lopez the penalty would be a 60-workday suspension, and the causes asserted against her included inexcusable neglect of duty (Gov. Code, § 19572, subd. (d)),[2] willful disobedience (§ 19572, subd. (o)), other failure of good behavior (§ 19572, subd. (t)), and unlawful retaliation (§ 19572, subd. (x)). The notice also alleged violations of the California Code of Regulations and the CDCR Department Operations Manual.

*The ALJ's Determination*

In the section of her opinion addressed to credibility determinations, the ALJ stated that she credited Lopez's testimony that she posted the document to share the circumstances of her discipline for using profanity and that the penalty was modified from a suspension to a reprimand.

---

[2]    Further undesignated section references are to the Government Code.

5

Addressing Lopez's First Amendment defense, the ALJ concluded that Lopez's speech, in posting the document, "was of minimal general public concern." It was not directed at the public and did not contribute to any public awareness or debate. The document did not disclose corruption, malfeasance, or significant failure in prison operations. The document "describes only a single disciplinary action, for minor misconduct, against one Correctional Officer." The ALJ concluded that Lopez's speech could serve to disrupt the workplace, negatively affect working relationships, and damage morale, specifically as to how Joshua P.'s and Jeffrey D.'s coworkers would view them. Additionally, Lopez's speech could damage prison operations by discouraging employees from reporting misconduct. The ALJ concluded that, on balance, CDCR's interest in maintaining its operations outweighed Lopez's free speech interest. Therefore, the First Amendment did not prohibit disciplinary action against Lopez for posting the document.

The ALJ dismissed the causes based on unlawful retaliation, inexcusable neglect of duty, and willful disobedience. The ALJ sustained the charge alleging other failure of good behavior, finding that Lopez's conduct was potentially destructive and disruptive, and that, while the evidence did not prove that Lopez's motivation was to retaliate, Joshua P.'s and Jeffrey D.'s perception to the contrary was not unreasonable.

Lastly, the ALJ modified the discipline imposed, reducing the penalty to a 20-workday suspension, because the most serious allegations were not proven.

*The SPB Decision and Order*

The SPB rejected the ALJ's proposed decision and resolved to decide the matter itself. In its subsequent decision and order, the SPB adopted the ALJ's findings of fact and conclusions of law, with the exceptions of the dismissal of the inexcusable neglect of duty charge and modification of the discipline. The SPB concluded that Lopez's conduct constituted both an inexcusable neglect of duty and a failure of good behavior, and that CDCR's original 60-workday suspension was appropriate.

6

The SPB concluded that Lopez knew she had a duty to be respectful to others and not engage in conduct that amounted to or promoted a code of silence, which would run contrary to CDCR's requirement that officers report staff misconduct.  It further concluded that Lopez knew and understood her duty but acted in a manner contrary to it.  The SPB rejected the argument that Lopez could not have committed inexcusable neglect of duty because she lacked notice of her duty to redact the names of the reporting officers from her posting.  The SPB stated that the duty to treat others with dignity was sufficiently clear, that Lopez, a seasoned correctional officer, knew that identifying fellow officers as those who reported her misconduct would subject them to harassment, and that this conduct violated her duty to treat others with dignity and respect.  The SPB also found Lopez was aware of the ills of promoting the code of silence, but her actions created a chilling effect on reporting misconduct.

Of the discipline to be imposed, the SPB noted that the ALJ recommended a reduction because CDCR failed to prove that Lopez intended to retaliate against Joshua P. and Jeffrey D.  However, the SPB concluded that the harm to Joshua P. and Jeffrey D., and to the institution and its staff, was significant, and Lopez's failure to accept responsibility compounded the problem and justified the penalty originally imposed by CDCR.

*Writ Petition in the Trial Court*

Lopez filed a petition for a writ of administrative mandate in the trial court.  (Code of Civ. Proc., § 1094.5.)  Lopez argued that the SPB failed to proceed in the manner required by law and abused its discretion in concluding her speech was not entitled to First Amendment protection.  She further argued that the SPB deprived her of a fair trial by improperly excluding evidence that would have shown CDCR's actual reason for disciplining her was that it had received notice of a lawsuit filed against it by Joshua P. and Jeffrey D., not because Lopez's speech was disruptive or a threat to operations.  She

7

also filed a motion pursuant to Code of Civil Procedure section 1094.5, subdivision (e), to augment the administrative record with this evidence.

In a tentative ruling, the trial court denied Lopez's motion to augment the administrative record and her petition for a writ of mandate.

The trial court rejected Lopez's First Amendment defense, agreeing with the ALJ that Lopez's speech was not a matter of public concern. The speech—the notice of adverse action Lopez posted—did not reveal any corruption or malfeasance or failure in prison operations, but instead only described " 'a single disciplinary action, for minor misconduct, against one Correctional Officer.' " The court stated: "Lopez asks the Court to accept the posting of certain details from her Notice of Adverse Action—which is not inherently public—as a message about illegal and wasteful conduct by CDCR, rather than the public airing of her personal grievances with the management. The Court declines to overlook the actual content of the speech in favor of Lopez's stated intent." The court rejected Lopez's claim that the SPB improperly excluded evidence regarding CDCR's motives, and denied Lopez's motion to augment the record in support of her First Amendment defense.

The trial court also rejected Lopez's argument that she lacked due process notice as to the charge of inexcusable neglect of duty. The court concluded: "There is no factual dispute as to whether Lopez knew of the policies regarding dignity and respect and the Code of Silence. The policies were not too vague, and Lopez's behavior under these circumstances were clear breaches of those policies."

Lastly, the trial court rejected Lopez's argument that she had insufficient notice of the discipline imposed given the factual finding that she did not unlawfully retaliate. The court concluded that, contrary to Lopez's contention, she was not punished for conduct not alleged in the charging document. Rather, she "was charged with inexcusable neglect of duty for posting the disciplinary documents, and punished on that same basis." The court determined that the notice of adverse action alleged inexcusable neglect of duty *and*

8

unlawful retaliation as separate grounds for discipline. In any event, there was no significant difference between the charged conduct and the proved conduct: "although the ALJ found that Lopez had not 'posted the document as a retaliatory attack against' the reporting officers [citation], the [SPB] found that she knowingly posted the documents, including the names of the reporting officers, with knowledge of the likely negative consequences upon the reporting officers as well as her duties to treat them with respect and dignity and not to promote the Code of Silence."

After oral argument, the trial court affirmed its tentative ruling. In an order and judgment, the trial court denied Lopez's motion to augment the record and denied her writ petition.

DISCUSSION

I

*Applicable Principles of Law*

To discipline a permanent state employee, the "employer, in this case CDCR, must first determine whether there is cause for discipline and, if so, what discipline to impose." (*Rodgers v. State Personnel Bd.* (2022) 83 Cal.App.5th 1, 10 (*Rodgers*).) "To comply with due process, the employer must give the employee notice of and reasons for the proposed disciplinary action and give the employee an opportunity to respond." (*Ibid*., citing § 19574 & *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 215.)

"Except in cases involving minor disciplinary matters, the employee has a right to challenge the action at an evidentiary hearing before the [SPB] at which the employer must prove the charges by a preponderance of the evidence and establish that the proven misconduct constitutes cause for discipline under the relevant statutes." (*Rodgers, supra*, 83 Cal.App.5th at p. 10.) The SPB's ALJ "presides over the hearing as the fact finder and adjudicator and issues a proposed decision which the [SPB] may adopt, modify or reject." (*Ibid*.) If the SPB "renders an adverse decision, the employee may seek review

9

of that decision in the superior court by means of a petition for writ of administrative mandamus." (*Ibid.*)

"Trial and appellate courts review petitions for administrative mandamus under the same standards." (*Rodgers, supra*, 83 Cal.App.5th at p. 10.) On appeal in mandate actions, we " 'review the agency's action, not the trial court's decision.' " (*Napa Valley Unified School Dist. v. State Bd. of Education* (2025) 110 Cal.App.5th 609, 625.) "The question we must answer is whether the agency has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion by the agency." (*Rodgers,* at pp. 10-11.) "Abuse of discretion 'is established if the respondent [agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.' " (*Id.* at p. 11.) "Factual findings are reviewed under the substantial evidence standard and purely legal questions like whether the appellant was given sufficient notice are reviewed de novo." (*Ibid.*)

II

*First Amendment Defense*

Lopez argues the SPB erred in rejecting her First Amendment defense, erroneously finding that her speech was not a matter of public concern. She also argues that the SPB deprived her of her right to a fair hearing by excluding evidence that would prove that CDCR's proffered concerns over disruption were pretextual, and the trial court erred in denying her motion pursuant to Code of Civil Procedure section 1094.5, subdivision (e), to augment the administrative record to include this evidence. We disagree.

A.    *The First Amendment Defense Generally*

The "First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." (*Garcetti v. Ceballos* (2006) 547 U.S. 410, 417.) "The discipline imposed on a public employee may

10

not infringe constitutionally protected free speech." (*Department of Corrections v. State Personnel Bd.* (1997) 59 Cal.4th 131, 139.)

A threshold question in considering a First Amendment defense in this context "is whether the employee's challenged speech may be 'fairly characterized as constituting speech on a matter of public concern . . . .' " (*Chico Police Officers' Assn. v. City of Chico* (1991) 232 Cal.App.3d 635, 643, quoting *Connick v. Myers* (1983) 461 U.S. 138, 146.) "This inquiry is a question of law, not fact." (*Chico Police Officers' Assn.,* at p. 643.) " 'Speech by public employees may be characterized as not of "public concern" when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies. [Citation.] On the other hand, speech that concerns "issues about which information is needed or appropriate to enable the members of society" to make informed decisions about the operation of their government merits the highest degree of first amendment protection.' " (*Gray v. County of Tulare* (1995) 32 Cal.App.4th 1079, 1090.) To be deemed to address a matter of public concern, speech may relate "to any matter of political, social, or other concern to the community . . . ." (*Connick,* at p. 146.) "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." (*Id.* at pp. 147-148, fn. omitted.)

If the employee did not offer speech as a citizen on a matter of public concern, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." (*Garcetti v. Ceballos, supra*, 547 U.S. at p. 418.) If the employee did offer speech as a citizen on a matter of public concern, "then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." (*Ibid*.) "The determination whether a public employee has been properly disciplined for speech related activities requires 'a

balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " (*Department of Corrections v. State Personnel Bd., supra*, 59 Cal.4th at p. 139, quoting *Pickering v. Board of Education* (1968) 391 U.S. 563, 568.) "The proper balance to be struck is a question of law for the court." (*Department of Corrections,* at p. 139.)

B.     *Lopez's Speech*

The document Lopez posted pertaining to her prior discipline stated that there was a notice of adverse action against her, although she redacted her first name, and that her penalty was a nine-day suspension. Below that, it stated that, per a signed stipulation, the penalty was reduced to a letter of reprimand. The document then set forth the detailed allegations concerning Lopez's misconduct. In the interest of completeness in our First Amendment defense analysis, we quote this document at length:

"*3. On or about June 14, 2017, while performing your duties as a CO on second watch (0800 –* 1600 hours), you were assisted by Investigative Services Unit (ISU) CO [Joshua P.] in conducting a body scan of an inmate you believed to be in possession of contraband. During this procedure, you told CO [Joshua P.] '[y]ou are on my shit list,' or words to that effect. [Joshua P.] asked you why, and you responded, 'for smutting up [CO] [Juliana P.],' or words to that effect.

"*You were discourteous to CO* [*Joshua P.*] *by stating to him that he is on your 'shit list' or* words to that effect. As a CO assigned to ISU, CO [Joshua P.] is involved in the gathering of information from inmates that may implicate staff in misconduct, which may have included alleged misconduct involving CO [Juliana P.]. You were discourteous to [Joshua P.] for performing his duties as an ISU officer. In doing so, you neglected your duties as a peace officer, and brought discredit to yourself and the department.

12

"*4. On or about June 19, 2017, while performing your duties as a CO on second watch* (0700-1500 hours), you came into contact with ISU COs [Joshua P.] and [Jeffrey D.] on the Facility B Patio.  CO [Joshua P.] greeted you.  You responded by stating, 'hey asshole,' or words to that effect.  [Joshua P.] asked you why you believed he was an asshole, and you responded 'you know why.'  Subsequently, you came into contact with [Jeffrey D.] and stated, 'there is the other asshole,' or words to that effect.

"*You* [*illegible*] *discourteous to COs* [*Joshua P.*] *and* [*Jeffrey D.*] *when you called them 'asshole.'  In* doing [illegible] your duties as a CO and brought discredit to yourself and the department.  [Illegible] conduct also violated Government Code sections 19572 [, subdivisions] (d), (m), (o), and (t)."  (Italics added.)  The passages that are italicized here were highlighted in yellow in the document Lopez posted, as were the parts of the document that specified the original and modified penalties.

The other document Lopez posted was a withdrawn notice of adverse action against corrections officer Elizabeth H.  This document is not at all legible in the photographs reproduced in the record.  According to Lopez's hearing testimony, this document contained highlighted text stating, "Withdrawn Notice of Adverse Action," and a paragraph entitled, "Nature of the Adverse Action."  Lopez testified, "And then I can't read anymore of it."  According to the ALJ, on this document, Lopez "highlighted in yellow the title '<u>WITHDRAWN NOTICE</u> <u>OF ADVERSE ACTION</u>' and the entirety of a four-line paragraph titled, '<u>NATURE OF</u> <u>THE ADVERSE ACTION</u>.'  That document did not identify any other staff involved in the disciplinary action against" Elizabeth H. (Fn. omitted.)  The ALJ specified that the record "did not otherwise establish the content of that paragraph."

### C.    *Matter of Public Concern*

As stated, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  (*Connick v. Myers, supra*, 461 U.S. at pp. 147-148, fn. omitted.)

"Content is ' "the greatest single factor" ' " in this inquiry. (*Kirchmann v. Lake Elsinore Unified School Dist.* (1997) 57 Cal.App.4th 595, 601-602.)

Based on the content, form, and context of the documents Lopez posted, her speech amounts to no more than descriptions of the adverse actions against her and Elizabeth H. Lopez neither included nor implied any broader statement or claim, and she did nothing, implicitly or explicitly, to connect these adverse actions to other matters. As CDCR notes, Lopez's "posting contained no commentary on broader institutional abuses or failures of public trust." As the ALJ and the trial court both observed, Lopez's speech in the document concerning her prior disciplinary action did not reveal any corruption or malfeasance, failure in prison operations, inefficiency, or systemic problems with employee relations or prison management, but instead only described " 'a single disciplinary action, for minor misconduct, against one Correctional Officer.' " And there is no evidence in the record to suggest that anything else posted on the bulletin board added any additional context to Lopez's postings. Lopez's speech " 'deals with individual personnel disputes and grievances' " that " 'would be of no relevance to the public's evaluation of the performance of' " CDCR. (*Gray v. County of Tulare, supra*, 32 Cal.App.4th at p. 1090.)

We conclude that nothing in the record establishes, or even suggests, that Lopez's speech was a matter of public concern. The documents do not address " ' "issues about which information is needed or appropriate to enable the members of society" to make informed decisions about the operation of their government . . . .' " (*Gray v. County of Tulare, supra*, 32 Cal.App.4th at p. 1090.) This speech did not relate "to any matter of political, social, or other concern to the community . . . ." (*Connick v. Myers, supra*, 461 U.S. at p. 146.) We conclude that Lopez's challenged speech may not be "fairly characterized as constituting speech on a matter of public concern . . . ." (*Ibid.*)

Lopez argues that her posting was of public concern because it addressed "problems such as abuse of power, wastefulness, and inefficiency at the government

agency where she worked." Nowhere in the record do we find factual support for this argument.

Lopez emphasizes that she *also* posted the document related to Elizabeth H., thus establishing that "only half of the documents posted by Lopez arose from her own discipline . . . ." The fact that Lopez *also* posted a withdrawn notice of adverse action that had been filed against her friend and fellow corrections officer does not persuade us that Lopez's speech amounted to a matter of public concern in the absence of anything to support that claim.

"When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." (*Connick v. Myers, supra*, 461 U.S. at p. 146.) Because we have concluded Lopez's speech did not address a matter of public concern, she "has no First Amendment cause of action based on his or her employer's reaction to the speech." (*Garcetti v. Ceballos, supra*, 547 U.S. at p. 418.)

D.      *Exclusion of Evidence/Denial of Motion to Augment the Record*

Lopez argues the SPB deprived her of a fair trial by excluding evidence that would have proved that CDCR's proffered reasons for disciplining her were pretextual, and the trial court erred in denying her motion to augment the record with this evidence. However, we have concluded that Lopez's speech did not address a matter of public concern. Where a state employee's speech "cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for us to scrutinize the reasons for" the discipline imposed by the state employer. (*Connick v. Myers, supra*, 461 U.S. at p. 146, fn. omitted; see also *Garcetti v. Ceballos, supra*, 547 U.S. at p. 418.) Accordingly, we have no reason to proceed to the next step of the analysis or to consider Lopez's arguments challenging CDCR's proffered reasons for disciplining her in the context of her First Amendment defense.

*Due Process Notice–Inexcusable Neglect of Duty*

Lopez argues the SPB violated her right to due process notice, as well as its own precedent, by sustaining the charge of inexcusable neglect of duty. She asserts that "CDCR alleged that Lopez neglected her duty by violating certain aspirational policies such as treating others with respect, demonstrating professionalism, honesty and integrity, and not threatening the safety and security of the institution," but CDCR presented no evidence "that it had any policy which would put an employee on notice that they are prohibited from posting portions of their disciplinary action on a union bulletin board." We disagree with Lopez's framing and conclusion.

" 'Due process requires that [an employee] be given "notice . . . of the standards by which his conduct is to be measured" [citation] and "fair notice as to the reach of the [disciplinary] procedure." [Citation.] That requires that the respondent be given adequate notice both of the claimed legal standard and the events which are alleged to contravene it and an opportunity to challenge them. Where the cause alleged has potential application to a broad range of conduct, such as unprofessional conduct, the events alleged to contravene the charge do more than allege what must be proved. They also provide criteria by which the charge is narrowed.' " (*Rodgers, supra*, 83 Cal.App.5th at p. 10.) "[P]urely legal questions like whether the appellant was given sufficient notice are reviewed de novo." (*Id.* at p. 11.)

A state employee may be disciplined for inexcusable neglect of duty. (§ 19572, subd. (d).) Inexcusable neglect of duty " 'means an intentional or grossly negligent failure to exercise due diligence in the performance of a known official duty.' " (*Gubser v. Department of Employment* (1969) 271 Cal.App.2d 240, 242.) Under SPB precedent, to establish inexcusable neglect of duty, an employer must establish that (1) it had a clear policy, (2) the employee had notice of the policy, and (3) the employer intended to enforce the policy. (*E.D.* (1993) SPB Dec. No. 93-32, p. 9.) "To be subject

to discipline for inexcusable neglect of duty, an employee must have actual or constructive notice of expected standards of conduct, unless the conduct is so clearly wrong that notice is not necessary." (*K.S.* (2017) SPB Dec. No. 17-02, p. 17.) However, an employer does not have to "promulgate written policies concerning every possible permutation" of misconduct. (*M.M.* (1995) SPB Dec. No. 95-01, p. 8.)

The notice of adverse action alleged, among other things, that Lopez violated section 31040.3.4.3 of the CDCR Department Operations Manual by failing to conform to section 33030.3.1 thereof (section 33030.3.1). Section 33030.3.1 requires, among other things, that an employee demonstrate professionalism, honesty, and integrity, and treat fellow employees with dignity and respect. Thus, based on section 33030.3.1, Lopez was on actual or constructive notice that she had a duty to demonstrate professionalism, honesty, and integrity, and to treat fellow employees with dignity and respect. Additionally, Lopez testified that she was aware there was code of silence training at Salinas Valley State Prison. She acknowledged that part of that training cautioned that the code of silence might make staff reluctant to report misconduct because they could be labeled rats or snitches for doing so.

Based on the foregoing, we agree with the determination of the SPB that Lopez "knew she had a duty to be respectful to others and not to engage in conduct that amounts to or promotes a code of silence, which is the antithesis of the department's mandate on officers to report staff misconduct. She knew and appreciated her duty and responsibility but acted in a manner that was contrary to her obligations" by posting the document identifying Joshua P. and Jeffrey D., the officers who reported her prior misconduct. We also agree with the trial court's conclusions that "[t]here is no factual dispute as to whether Lopez knew of the policies regarding dignity and respect and the Code of Silence," that, contrary to Lopez's contentions, the policies were not too "vague" or "aspirational" to give notice of the expected standards of conduct or to support disciplinary action, and "Lopez's behavior under these circumstances were clear breaches

17

of those policies." CDCR established that it had a clear policy, Lopez had notice of the policy, and CDCR intended to enforce the policy. (See *E.D., supra*, SPB Dec. No. 93-32, p. 9.)

The SPB rejected Lopez's argument that she lacked notice of a duty to redact Joshua P.'s and Jeffrey D.'s names from her posting. Consistent with its precedent (*M.M., supra*, SPB Dec. No. 95-01, p. 8), the SPB stated that "a department does not have to promulgate written policies or directives concerning every possible permutation of misconduct." The SPB continued: "The duty to treat others with dignity and respect is sufficiently clear. [Lopez], as a seasoned correctional officer, knew that by openly identifying [Joshua P.] and [Jeffrey D.] as persons responsible for reporting [her] misconduct, they would be subject to harassment. Such action clearly violates her duty to treat others with dignity and respect." We agree with the SPB's conclusion on this point as well.

Lopez's argues that several witnesses testified that they were not aware of a policy that prohibited her from posting her disciplinary document, it was therefore not "sufficiently clear" to these witnesses that Lopez had violated a known duty, and yet the SPB upheld her discipline on the ground that the duty she violated was "sufficiently clear." (Italics omitted.) Lopez likewise testified that she was unaware of any policy prohibiting her from posting her disciplinary documents. Warden Hatton testified that he was unaware of any policy that prohibited posting resolutions of disciplinary actions. And Lieutenant Wade testified he was unaware of any policy that would prohibit a corrections officer from discussing their own discipline. However, it was not merely the anodyne posting of one's own adverse action documents for which Lopez was disciplined. She was disciplined for posting excerpts from those documents, which she cobbled together into a single document on which she included, and highlighted, the unredacted last names of the two corrections officers who had reported her prior misconduct, and for the obvious effects doing so would have within the prison and

18

among those officers' colleagues. Lopez's description of her discipline as being for posting her disciplinary documentation while glossing over the fact that she included, and emphasized, the unredacted names of coworkers who reported her prior misconduct, mischaracterizes and minimizes the nature of the actions for which she was disciplined.

We conclude that Lopez did not lack notice of the charges she faced or the policies she was alleged to have violated. The SPB did not violate her due process rights.

IV

*Due Process - Factual Bases for Sustained Allegations*

Lopez also argues the SPB violated her right to due process when it sustained allegations, and the full penalty, on significantly different factual bases than what was alleged in the notice of adverse action. We again disagree.

As stated, " 'Due process requires that [an employee] be given "notice . . . of the standards by which his conduct is to be measured" [citation] and "fair notice as to the reach of the [disciplinary] procedure." [Citation.] That requires that the respondent be given adequate notice both of the claimed legal standard and the events which are alleged to contravene it and an opportunity to challenge them.' " (*Rodgers, supra*, 83 Cal.App.5th at p. 10.) "[P]urely legal questions like whether the appellant was given sufficient notice are reviewed de novo." (*Id*. at p. 11.)

A.      *Notice of Factual Bases for Discipline*

According to Lopez, the SPB violated her due process rights by upholding the inexcusable neglect of duty and other failure of good behavior charges on factual bases different than alleged in the notice of adverse action.

Among other things, the notice of adverse action informed Lopez she had been required to comply with California Code of Regulations, title 15, section 3004, subdivision (b), which provides that employees "will not openly display disrespect or contempt for others in any manner intended to or reasonably likely to disrupt orderly operations within the institutions or to incite or provoke violence." The notice alleged

19

that Lopez posted the document pertaining to her prior discipline. The notice charged that she both neglected her duty *and* retaliated based on her posting which identified Joshua P. and Jeffrey D. The notice asserted that Lopez posted the document in retaliation against them for reporting her prior misconduct. The notice further alleged that Lopez "neglected [her] duty and retaliated against [Joshua P.] and [Jeffrey D.]" by posting the document, which "impugned the character or reputation" of Joshua P. and Jeffrey D. The notice further alleged that Lopez's actions "threatened the safety and security of the institution." Additionally, the notice alleged that Lopez failed to conform to sections of the CDCR Department Operations Manual, including section 33030.3.1, which required that employees demonstrate professionalism, honesty, and integrity, and that employees treat fellow employees with dignity and respect. Finally, the notice alleged Lopez caused discredit to herself and CDCR by posting the document in retaliation.

Lopez argues that, having dismissed the unlawful retaliation charge, the SPB upheld the inexcusable neglect of duty charge "on [a] new theory," that she had a known duty to treat others with dignity and respect, and she knew that failing to redact individual names from her posting would cause others to view them negatively.

The SPB sustained this charge, concluding that Lopez knew she had a duty to be respectful to others and not engage in conduct that promoted a code of silence, which would run contrary to CDCR's requirement that officers report staff misconduct. The SPB stated that the duty to treat others with dignity was sufficiently clear, Lopez knew that identifying Joshua P. and Jeffrey D. as those who reported her prior misconduct would cause others to view them negatively and would subject them to harassment and being labeled as snitches or rats, and her conduct in identifying them violated her duty to treat others with dignity and respect. According to the SPB, this threatened the safety of Joshua P. and Jeffrey D., as well as "the overall security of the institution." Lopez also

20

was aware of the ills of promoting the code of silence but, by identifying fellow officers, she contributed to a chilling effect on reporting misconduct.

Thus, the notice alleged that Lopez failed to conform to CDCR Department Operations Manual section 33030.3.1 which requires that employees demonstrate professionalism, honesty, and integrity, and treat fellow employees with dignity and respect, and the SPB found that Lopez violated her known duty to treat fellow employees with dignity and respect by identifying them in her posting. The notice alleged that Lopez's actions "threatened the safety and security of the institution," and the SPB sustained the charge finding that Lopez's actions threatened the safety of Joshua P. and Jeffrey D., as well as the overall security of the institution. Notwithstanding the dismissal of the unlawful retaliation charge, the notice provided Lopez with ample notice of the inexcusable neglect of duty charge, and the theories supporting the charge on which the SPB ultimately relied.

As for the charge of other failure of good behavior, to support that charge, the " 'misconduct must bear some rational relationship to . . . employment and must be of such character that it can easily result in the impairment or disruption of the public service.' " (*Yancey v. State Personnel Bd.* (1985) 167 Cal.App.3d 478, 483.) The notice alleged that Lopez posted the document naming Joshua P. and Jeffrey D.; this impugned their characters; Lopez's actions threatened the safety and security of the institution; and Lopez discredited herself and CDCR by posting the document in retaliation. In her determination, adopted by the SPB, the ALJ found that Lopez's posting on the bulletin board at the prison while on duty was plainly related to her employment, a finding with which Lopez does not take issue. The ALJ also found this was potentially destructive because it could disrupt the workplace by damaging working relationships and discouraging reporting misconduct. Impugning Joshua P.'s and Jeffrey D.'s character and reputation would damage working relationships as alleged, which, they testified, it did. The notice may not artfully plead a charge of other failure of good behavior. Some

of these allegations are interspersed among, or are also, allegations of inexcusable neglect of duty.  However, the notice satisfies the due process requirements of " 'adequate notice both of the claimed legal standard and the events which are alleged to contravene it . . . .' "  (*Rodgers, supra*, 83 Cal.App.5th at p. 10.)

In *Rodgers*, on which Lopez relies, the appellate court concluded that the ALJ had found that the plaintiff "engaged in significantly different conduct than that alleged in the" notice of adverse action, and therefore the plaintiff "lacked notice such conduct could subject him to the full penalty proposed in the" notice of adverse action.  (*Rodgers, supra*, 83 Cal.App.5th at p. 10.)  Thus, in *Rodgers*, the factual findings adopted by the SPB differed significantly from those in the notice of adverse action.  (*Id*. at pp. 5, 11.) We need not distinguish the underlying facts in *Rodgers*.  Here, as set forth above, the facts alleged in the notice of adverse action were consistent with the SPB's findings and determinations.  Neither the ALJ nor the SPB found that Lopez "engaged in significantly different conduct than that alleged in the" notice of adverse action.  (*Id*. at p. 10.)

Lopez had ample notice of the charges and underlying facts and theories.  Lopez was not deprived of her right to due process.

### B.    *Penalty*

Lopez maintains that the SPB violated her due process rights by reinstating the original penalty of a 60-workday suspension based on different facts and theories than those alleged in the notice of adverse action.  She argues that she was not on notice that she could be subject to the full penalty proposed in the notice if the SPB found that she engaged in different conduct than what was alleged.

We have concluded that the SPB did not base its conclusions on conduct different than what was alleged in the notice of adverse action.  Accordingly, we reject the premise underlying Lopez's argument concerning the reinstatement of the 60-workday suspension.  The SPB did not reinstate that penalty based on facts and theories different from what was alleged in the notice of adverse action.

22

## DISPOSITION

The judgment is affirmed.  Real party in interest CDCR shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


_____\s\_____,
Krause, J.


We concur:


_____\s\_____,
Mauro, Acting P. J.


_____\s\_____,
Feinberg, J.

23